**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DORON GAHTAN<br><br>  Plaintiff,<br><br>  -against-<br><br>BAKKT HOLDINGS, INC. f/k/a VPC IMPACT ACQUISITION HOLDINGS, JOHN MARTIN, OLIBIA STAMATOGLOU, GORDON WATSON, KAI SCHMITZ, and KURT SUMMERS,<br><br>  Defendants. | Case No. 1:23-CV-04678-EK-PK<br><br>Service Date:  December 22, 2023 |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ......................................................................................................... 1

BACKGROUND............................................................................................................................... 2

    A.   Bakkt Becomes a Publicly-Traded Entity ..................................................................... 2

    B.   Relevant Allegations ...................................................................................................... 3

ARGUMENT.................................................................................................................................... 4

I.     PLAINTIFF FAILS TO ALLEGE WHEN, AND IN WHAT AMOUNTS, HE TRADED
BAKKT SECURITIES ..................................................................................................................... 4

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE SECURITIES ACT.................. 5

    A.   Plaintiff Does Not Plead a Materially Misleading Statement in the Registration Statement
.................................................................................................................................... 7

        1.   Interpretations of Accounting Guidelines Are Statements of Opinion ....................... 7

        2.   Plaintiff Fails to Plead VIH's Classification Was Subjectively False ........................ 9

        3.   Plaintiff Fails to Plead a False Internal Controls Statement ................................... 11

    B.   Plaintiff Fails to Plead That Any Alleged Misstatement Was Material......................... 12

    C.   Plaintiff Fails to Plead Scienter in Connection with His Securities Act Claim............... 16

    D.   Plaintiff's Securities Act Claim Is Not Compensable ..................................................... 16

III.   PLAINTIFF FAILS TO PLEAD EXCHANGE ACT CLAIMS.................................... 17

    A.   Plaintiff Fails to Allege a Material Misrepresentation or Omission.............................. 17

    B.   Plaintiff Fails to Plead a Strong Inference of Scienter ................................................. 18

        1.   Plaintiff Fails to Plead Motive and Opportunity..................................................... 18

        2.   Plaintiff Fails to Allege Conscious Misbehavior or Recklessness ........................... 20

        3.   Plaintiff Cannot Overcome the Inference That Defendants Honestly Believed Their
Accounting Judgment Was Correct........................................................................ 22

IV.   PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION............................................. 24

V.    PLAINTIFF FAILS TO DEMONSTRATE CONTROL PERSON LIABILITY ............... 25

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**PAGE**

### Cases

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)........................................................................ 18

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018).................................................................................. 7

*Arora v. HDFC Bank Ltd.*,
2023 WL 3179533 (E.D.N.Y. May 1, 2023) .............................................................. 14, 15

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)............................................................................................. 18, 25

*Barr v. McGraw-Hill, Inc.*,
710 F. Supp. 95 (S.D.N.Y. 1989)........................................................................................ 5

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) ......................................................................................... 18

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ........................................................................................ 15, 16

*In re Chembio Diag., Inc. Sec. Litig.*,
616 F. Supp. 3d 192 (E.D.N.Y. 2022)................................................................................. 6

*In re Chembio Diag., Inc. Sec. Litig.*
586 F. Supp. 3d 199 (E.D.N.Y. 2022)............................................................................... 21

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2018 WL 2382600 (S.D.N.Y. May 24, 2018)..................................................................... 8

*City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*,
752 F.3d 184 (2d Cir. 2014).............................................................................................. 17

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010)................................................................................. 5

*Colbert v. Rio Tinto PLC*,
392 F. Supp. 3d 329 (S.D.N.Y. 2019)............................................................................... 15

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004).............................................................................. 19

*Das v. Rio Tinto PLC,*
332 F. Supp. 3d 786 (S.D.N.Y. 2018)............................................................................... 18

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009) ............................................................................ 18

*In re Eaton Corp. Sec. Litig.*,
  318 F. Supp. 3d 659 (S.D.N.Y. 2018) ............................................................... 14

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .............................................................................. 5

*El Dabe v. Calavo Growers, Inc.*,
  719 Fed. App'x 607 (9th Cir. 2018) ............................................................... 9, 11

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ......................................................................................... 18

*Fialko v. Alcorba, Ltd.*,
  2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) ................................................... 19

*Fila v. Pingtan Marine Enter. Ltd.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016) ............................................................... 24

*Fogel v. Vega*,
  759 F. App'x 18 (2d Cir. 2018) ....................................................................... 12

*Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*,
  336 F. Supp. 3d 196 (S.D.N.Y. 2018) ............................................................... 21

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ............................................................................. 19

*Gutman v. Lizhi, Inc.*,
  633 F. Supp. 3d 681 (E.D.N.Y. 2022) ............................................................... 25

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) ............................................................. 8, 9

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) ................................................................. 6

*Hou Liu v. Intercept Pharms., Inc.*,
  2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ................................................... 18

*In re IPO Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) ............................................................ 6, 16

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ................................................... 11

*Jedrzejczyk v. Skillz, Inc.*,
    2022 WL 2441563 (N.D. Cal. Jul. 5, 2022) ........................................................................ 8

*Kasilingam v. Tilray, Inc.*,
    2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .................................................................... 22

*In re Keryx Biopharm., Inc., Sec. Litig.*,
    2014 WL 585658 (S.D.N.Y. Feb. 14, 2014) ...................................................................... 24

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ............................................................................... 23

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012) ........................................................................ 20, 23

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005) .............................................................................................. 24

*Levy v. Maggiore*,
    48 F. Supp. 3d 428 (E.D.N.Y. 2014) ................................................................................ 17

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    902 F. Supp. 2d 329 (S.D.N.Y. 2012) ................................................................................ 5

*Maloney v. Ollie's Bargain Outlet Hldgs., Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) .............................................................................. 21

*May v. KushCo Hldgs., Inc.*,
    2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ................................................................. 23

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014) .................................................................................. 9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ................................................................................................ 5

*New Eng. Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo*,
    80 F.4th 158 (2d Cir. 2023) .............................................................................................. 18

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................................ 24

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................................ 19, 22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .............................................................. 7, 8, 9, 10, 12, 17

iv

*In re Omnicom Grp. Inc. Sec. Litig.*,
　541 F. Supp. 2d 546 (S.D.N.Y. 2008) ................................................................. 25

*Oran v. Stafford*,
　226 F.3d 275 (3d Cir. 2000) ............................................................................... 14

*Ottmann v. Hanger Ortho. Grp., Inc.*,
　353 F.3d 338 (4th Cir. 2003) .............................................................................. 19

*Parchmann v. MetLife*,
　2021 WL 320051 (E.D.N.Y. Jan. 11, 2021) ............................................... 7, 9, 10

*Pearson Cap. Partners, LLC v. James River Ins. Co.*,
　151 F. Supp. 3d 392 (S.D.N.Y. 2015) ................................................................. 19

*Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Hldgs. Ltd.*,
　886 F. Supp. 2d 328 (S.D.N.Y. 2021) ................................................................. 13

*In re Ramp Networks, Inc. Sec. Litig.*,
　201 F. Supp. 2d 1051 (N.D. Cal. 2002) ................................................................ 9

*Reilly v. U.S. Phys. Therapy, Inc.*,
　2018 WL 3559089 (S.D.N.Y. July 23, 2018) .............................................. 8, 10, 22

*Rombach v. Chang*,
　355 F.3d 164 (2d Cir. 2004) ................................................................................. 6

*Salim v. Mobile Telesystems PJSC*,
　2021 WL 796088 (E.D.N.Y. March 1, 2021) ......................................................... 7

*Sapssov v. Health Mgmt. Assoc., Inc.*,
　608 F. App'x 855 (11th Cir. 2015) ....................................................................... 24

*Setzer v. Omega Healthcare Invs., Inc.*,
　968 F.3d 204 (2d Cir. 2020) ............................................................................... 18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
　552 U.S. 148 (2008) ........................................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ........................................................................................... 18

*Thor Power Tool Co. v. Comm'r Internal Revenue*,
　439 U.S. 522 (1979) ...................................................................................... 8, 17

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
　2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ...................................................... 10

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) ........................................................................ 8, 17

*Woolgar v. Kingstone Companies, Inc.*,
   477 F. Supp 3d 193 (S.D.N.Y. 2020) ............................................................................... 22

*Wyche v. Adv. Drainage Sys., Inc.*,
   2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ........................................................... 10, 22

*Yaroni v. Pintec Tech. Hldgs. Ltd.*,
   600 F. Supp. 3d 385 (S.D.N.Y 2022) .............................................................................. 13

**Statutes / Rules**

15 U.S.C. § 77k ............................................................................................................ 5, 16

Fed. R. Civ. P. 9(b) .............................................................................................. 1, 5, 6, 17

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

**Other Authorities**

White, Nicola M., *Bloomberg*, "SPAC's Headed for New Wave of Restatements
   for Accounting Errors," Nov. 15, 2021 ............................................................................ 19

*Seeking Alpha*, "Why is Coinbase stock down today?  Bitcoin slump," Nov. 22, 2021 ............. 15

Defendant Bakkt Holdings, Inc. ("Bakkt" or the "Company") and Individual Defendants John Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers (together, "Defendants") respectfully submit this Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiff's near-100 page Amended Complaint boils down to one accusation: Defendants, along with the entire Special Purpose Acquisition Company ("SPAC") industry, incorrectly applied *one* subjective accounting principle. Plaintiff does not, and cannot, claim that this alleged error affected Bakkt's revenue, income, cash flows, or operations. Instead, Plaintiff asserts that Bakkt had to restate its "additional paid-in capital," "accumulated deficit," and "shareholders' equity"—three balance sheet items Plaintiff does not even define, let alone explain why they would matter to investors. Plaintiff's claims thus fail for these and the following reasons:

*First*, Plaintiff fails to plead a misstatement or omission. Courts have repeatedly recognized that accounting judgments like those challenged here are protected statements of opinion that are not false merely because they were incorrect. Instead, Plaintiff must plead that Defendants' accounting judgments—and resulting representations—were either subjectively disbelieved or not the product of a good faith accounting judgment. Plaintiff pleads neither.

*Second*, Plaintiff fails to plead any allegedly false statement was material. Plaintiff cannot plead that the restated balance sheet items significantly altered the total mix of information in the market without even alleging what they are, how they affect Bakkt (if at all), or why they matter to investors. The muted reaction of Bakkt's stock upon this "negative" disclosure confirms the immateriality of these line items.

*Third*, Plaintiff's allegations do not support a "strong inference of scienter" that is as

1

"cogent and compelling" as any non-culpable inference. Plaintiff offers no particularized facts indicating Defendants had knowledge about their accounting or balance sheets that differed from their public statements. Plaintiff instead relies on routinely-rejected, unparticularized allegations that Defendants "would have" or "must have" had such information. As is typical in GAAP cases, Plaintiff shows only that Defendants, the SPAC industry, and *their auditors*, had difficulty interpreting accounting guidelines, and falls far short of showing deliberate or reckless failure to do so. Nor do these allegations show that Defendants did not honestly hold their opinions about compliance. Rather, the allegations lead to a single plausible theory: Defendants—like the rest of the SPAC industry—believed the accounting judgments that were blessed by their auditors.

*Finally*, Plaintiff does not demonstrate a causal connection between Defendants' alleged misrepresentations and Plaintiff's alleged losses. Instead, Plaintiff relies on the announcement of previously-known market information and subsequent restatements to try to allege loss causation.

For the foregoing reasons, the action should be dismissed, with prejudice.

## BACKGROUND

### A.    Bakkt Becomes a Publicly-Traded Entity

Bakkt is a Delaware corporation that operates a digital asset management platform. ¶ 2.[1] VIH Impact Acquisition Holdings ("VIH") was a Cayman Islands SPAC. On January 11, 2021, VIH announced it would merge with a legacy Bakkt entity, which resulted, on October 15, 2021, in Bakkt Holdings, Inc. becoming a publicly-traded entity ("SPAC Transaction"). *See* ¶¶ 42, 64.

Defendants John Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers were directors and officers of VIH; Mr. Watson is also a director of Bakkt. ¶¶ 22-27.

---

[1] The Amended Complaint (ECF No. 18) is cited herein as "¶__".

B.      **Relevant Allegations**

Plaintiff pleads that, due to the misclassification of certain shares, Bakkt restated the financial statements that VIH had disclosed in the following SEC filings during the Class Period:

1.      The March 31, 2021 Registration Statement and September 17, 2021 Prospectus for the SPAC Transaction, ¶¶ 43, 57.

2.      The May 17, 2021 Form NT 10-Q, which acknowledged prior misclassification of certain warrants, ¶ 45; the May 21, 2021 Form 10 K/A, which represented that VIH classified Class A Ordinary shares pursuant to Accounting Standards Classification ("ASC") Topic 480 ("Topic 480"), and acknowledged a weakness in internal control relating to the same warrants, ¶ 46; and the May 24, 2021 Form 10-Q (for 1Q21), which restated VIH's balance sheet for Fiscal Year 2020, reclassified the same warrants, and represented compliance with Topic 480, ¶ 51.

3.      The August 13, 2021 Form 10-Q (for 2Q21), which represented compliance with Topic 480, ¶ 54.

4.      The October 13, 2021, Form 10-Q (for 3Q21), which noted a "reclassification adjustment related to temporary equity and permanent equity . . . [which] resulted in an adjustment to the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital, . . . accumulated deficit and Class A ordinary shares." ¶ 60. Specifically, VIH disclosed that, pursuant to Topic 480, VIH would reclassify Class A Ordinary shares previously deemed "permanent equity" as "temporary equity," and would have to adjust certain prior balance sheet metrics as well. *Id.* ¶¶ 60-61.

5.      The November 22, 2021 Bakkt Form 8-K, which included a statement of *Non-Reliance on Previously Issued Financial Statements or Related Audit Report or Completed Interim Review*, ¶ 65, and notified shareholders that Bakkt would restate certain VIH financial statements, including for the first three quarters of 2021, and for Fiscal Year 2020. *Id.*

3

6.      The December 7, 2021 Bakkt Form 10-Q/A, which restated the foregoing quarterly statements, ¶ 66, and a Form 10-K/A dated the same day that restated VIH's financial statements for the year ended December 31, 2020, ¶ 68.

Based on these restatements, Plaintiff alleges Defendants misstated certain balance sheet items on VIH's financial statements, misrepresented GAAP compliance and the strength of VIH's internal controls, and issued false SOX certifications.[2]  Each alleged misstatement, however, is really based on the single claim that VIH misrepresented that its classification of Class A Ordinary shares complied with Topic 480, such that "Class A [o]rdinary shares subject to mandatory redemption is [sic] classified as a liability instrument," that "[c]onditionally redeemable ordinary shares . . . are classified as temporary equity," and that "[a]t all other times, ordinary shares are classified as shareholders' equity." *See, e.g.*, ¶ 50.[3]

## ARGUMENT[4]

### I.      PLAINTIFF FAILS TO ALLEGE WHEN, AND IN WHAT AMOUNTS, HE TRADED BAKKT SECURITIES

The Amended Complaint fails to allege the most basic of information: when, and in what amounts, Plaintiff traded Bakkt securities.  Plaintiff's assertion that he "purchased securities (i.e, Bakkt's Class A common stock) during the Relevant Period," ¶ 20, is vague and conclusory, and the Amended Complaint neither attaches trading records nor pleads specific, relevant transactions.

---

[2] Specifically, Plaintiffs allege that Defendants' SEC filings misstated or omitted certain material information about its financial statements (*e.g.*, ¶¶ 57, 73), Class A Ordinary shares (*e.g.*, ¶¶ 71-72, 114, 144), internal controls over financial reporting (*e.g.*, ¶¶ 57, 77, 131, 147, 160), SOX certifications (¶¶ 112, 142, 152, 162), and compliance with GAAP (*e.g.*, ¶¶ 72, 107, 133, 150).

[3] Each SEC filing identified in the Complaint includes a substantially similar representation.

[4] Plaintiff appears not to have heeded the Court's admonition at the October 25, 2023 conference to streamline the Complaint and explain with particularity the relevant accounting provisions and alleged misstatements with clarity and particularity.  The Amended Complaint is just three pages shorter—and six paragraphs *longer*—and includes just one additional paragraph on Topic 480 (¶ 30) that states its basic elements.

4

In fact, the Amended Complaint only creates confusion by adding a new allegation that Plaintiff lost "over $640,000," ¶ 7, while keeping the allegation from the original Complaint that "Plaintiff has nearly $14 million in losses." ¶ 20. This pleading failure warrants dismissal of the Amended Complaint. *See, e.g., Barr v. McGraw-Hill, Inc.*, 710 F. Supp. 95, 97 (S.D.N.Y. 1989) ("To satisfy Rule 9(b), plaintiffs must plead the amount and price of the securities purchased by each plaintiff, the date and place of each purchase, and the losses suffered."); *see also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 432 (S.D.N.Y. 2010) (dismissing complaint where plaintiff failed to allege loss causation by not pleading "how many shares were sold, when those shares were sold, the price they received, or whether those sales were at a loss").

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE SECURITIES ACT

Under Section 11 of the Securities Act, Plaintiff must allege that a "registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)). A misstatement or omission is material where the omitted information would have "significantly altered the total mix of information." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009). Courts evaluate materiality by considering a misstatement's significance "in relation to the company's operations." *Id.* at 198.

Further, where, as here, "a [Securities] Act claim" is "predicated on fraud," Plaintiff must meet Rule 9(b)'s heightened standard by pleading the circumstances of fraud with particularity, *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 338 (S.D.N.Y. 2012), *aff'd sub nom., IBEW Loc. Union No. 58 Pension Tr. Fund and Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015), including by pleading scienter, *In re Chembio*

5

*Diag., Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 203 (E.D.N.Y. 2022) ("[C]ourts in this circuit have consistently . . . dismiss[ed] Securities Act claims that sound in fraud but fail to plead scienter.").

Plaintiff alleges that "[b]y violating" GAAP, "Defendants ***sought to***—and did—sidestep the SPAC charter term which established that VIH could consummate a business combination only if net tangible assets were at least $5,000,001." ¶ 67 (emphasis added); *see also id.* ¶ 75 (similar allegation). This "pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent" is insufficient to show intent, *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004), and is the same basic allegation underlying the scienter element of Plaintiff's Section 10(b) claim that "Defendants violated ASC 480-10-S99-3A to mislead investors into believing that VIH was compliant with its charter and therefore eligible to consummate the business combination," ¶ 96. *See In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 n.17 (S.D.N.Y. 2021) (analyzing Securities Act claim under 9(b) where that claim rested on same theory as Exchange Act claim, and sounded in fraud even though plaintiffs separated their claims under each Act and "disclaim[ed] fraud as a basis for their Securities Act claims."); *Plymouth Cnty. Ret. Ass'n v. Array Techs.*, 2023 WL 3569068, at *18 (S.D.N.Y. May 19, 2023) (Section 11 claims sound in fraud despite disclaimer of allegations of fraud or recklessness).

Finally, Plaintiff must also plead damages under Section 11. *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003). To do so, Plaintiff must, at minimum, demonstrate that Plaintiff sold shares below the IPO price. *Id.* As detailed below, Plaintiff fails to plead a materially false misstatement, scienter, or damages—each independently requiring dismissal of Plaintiff's Securities Act claim.

**A.      Plaintiff Does Not Plead a Materially Misleading Statement in the Registration Statement**

Plaintiff alleges that the Registration Statement misrepresented (i) how Defendants accounted for Class A Ordinary shares; (ii) amounts of additional paid-in capital, accumulated deficit, and shareholders' equity; and (iii) the extent of the ***disclosed*** weakness in internal controls. ¶¶ 70-80.   These allegations each arise from the claim that VIH—like the rest of the SPAC industry—misclassified certain warrants and stock based upon their redemption provisions. Plaintiff does not plead a materially false or misleading statement.

**1.      Interpretations of Accounting Guidelines Are Statements of Opinion**

There are two ways to plead a securities claim based on an opinion statement: (i) allege facts showing that the opinion was subjectively false (*i.e.*, not honestly held); or (ii) allege the defendant omitted material facts underlying the basis for the opinion and those facts conflict with what a reasonable investor would take from the statement itself. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).   An opinion is not false simply because the "belief turned out to be wrong," *id.* at 186, or even because it was "unreasonable, irrational, [or] excessively optimistic," *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 754 (S.D.N.Y. 2018) (quotation omitted).   Alleging facts sufficient to render an opinion false is "no small task."   *Omnicare*, 575 U.S. at 194.   Indeed, even "factual falsity per se is not sufficient to make a statement of opinion false and hence misleading."  *Parchmann v. MetLife*, 2021 WL 320051, at *3 (E.D.N.Y. Jan. 11, 2021), *aff'd sub nom.*, *KBC Asset Mgmt. NV v. MetLife, Inc.*, 2022 WL 480213 (2d Cir. Feb. 17, 2022).

Plaintiff challenges VIH's (and the entire SPAC industry's) accounting judgment regarding the interpretation of Topic 480—precisely the type of judgment courts routinely hold is protected under *Omnicare*. *See, e.g.*, *Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *8 (E.D.N.Y.

7

March 1, 2021) (applying the *Omnicare* standard to complex accounting judgments); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *6 (S.D.N.Y. May 24, 2018) ("[W]here there is no objective standard for an accounting decision, that decision should be construed as a statement of opinion and be analyzed under *Omnicare*."); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015) ("It is well settled that GAAP provisions are subject to interpretation . . . ."), *aff'd*, 649 Fed. App'x 7 (2d Cir. 2016); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 365 (S.D.N.Y. 2011) (Courts have long recognized that GAAP provisions "tolerate a range of 'reasonable' treatments" (quoting *Thor Power Tool Co. v. Comm'r Internal Revenue*, 439 U.S. 522, 544 (1979))).

In fact, the courts that have addressed, under *Omnicare*, classification pursuant to Topic 480 (or Topic 815, which applies to warrants), have dismissed securities fraud claims because statements relating to compliance with these Topics are protected opinions. In *Jedrzejczyk v. Skillz, Inc.*, 2022 WL 2441563 (N.D. Cal. Jul. 5, 2022), the Northern District of California dismissed a Section 11 claim arising from the alleged misclassification of warrants under Topic 815. *See id.* at *8. Defendants there had revised their warrant classification in light of the same April 2021 SEC guidance that prompted VIH's reclassification, *see* ¶ 198, and argued that "whether to classify warrants as an equity or liability was a matter of opinion, . . . [which was a] good-faith accounting decision[] immune from suit." *Id.* at *8. The Court agreed that "the prior classification of warrants as equity [was] a good faith accounting decision" and held that the alleged misstatements were inactionable. *Id.* Similarly, in *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *17 (S.D.N.Y. July 23, 2018), the Court rejected falsity assertions arising from misclassification of equity under Topic 480, noting the "self-evident" "complexity of the[] principles" involved under these GAAP rules.

8

Moreover, merely "restating the financial reports" does not plead that financial statements were "false and misleading when issued." ¶ 69. Plaintiff ignores the subjective nature of Topic 480 as well as the Company's explanation for the restatement: "unpublished but evolving positions expressed by the [SEC] staff." ¶ 65. Indeed, "the restatements do not by themselves satisfy the requirement that Plaintiffs plead specific facts showing the statements at issue were false when made," and a restatement "necessitated by 'changed circumstances'" is not an "explicit admission of falsity." *In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1066 (N.D. Cal. 2002); *see also In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015) (finding that a restatement of modest size undercut any inference of falsity); *Harris*, 135 F. Supp. 3d at 177 ("Financial statements are complicated documents and reasonable minds can differ on the appropriate level of disclosure; acceding to suggestions from the SEC and correcting errors simply does not suggest that the initial disclosures were made with fraudulent intent.").

### 2.    Plaintiff Fails to Plead VIH's Classification Was Subjectively False

Plaintiff fails to plead that VIH's view on classifying warrants and equity was not honestly held—*i.e.* that it was subjectively false. *Parchmann*, 2021 WL 320051, at *4 ("*Omnicare* requires that a statement of opinion be false only if the issuer does not genuinely believe what she says." (citing *Omnicare*, 575 U.S. at 186)). In fact, everything points the other way.

To start, the near-100 page Amended Complaint includes no allegations from confidential witnesses, no internal documents or communications, and no other sources of information showing Defendants' actual views of VIH's accounting classifications differed from the views expressed in VIH's SEC filings. Plaintiff relies on the mere fact of the restatements themselves, which is insufficient to plead subjective falsity. *See El Dabe v. Calavo Growers, Inc.*, 719 Fed. App'x 607, 608 (9th Cir. 2018) ("Calavo erroneously classified the contingent consideration as equity, instead

9

of liability, in its financial statements, resulting in a large overstatement of Calavo's earnings . . . . These facts . . . do not state a plausible case that these named Defendants acted with knowledge of falsity of their statements or with deliberate recklessness in issuing them."). Notably, Plaintiff does not allege that, as a result of the restatement, VIH incurred, or had to disclose, any actual economic losses—VIH's revenues, profits and loss, and other important metrics were unchanged. *See Parchmann*, 2021 WL 320051, at *4 (where plaintiff fails "to provide any evidence of economic loss following the disclosure of the restated financial statements . . . . Plaintiff cannot build their . . . claim upon the restatement per se."). Nor does Plaintiff identify statements about the application of Topic 480 that include an embedded, false statement, nor any underlying facts that are contrary to Defendants' expressed opinions. *Omnicare*, 575 U.S. at 185-86.

Further, VIH's financial statements and accounting decisions were necessarily approved by its third-party auditor. *See* Ex. A at 66 (May 21, 2021 Form 10-K with letter from auditor).[5] Plaintiff has not brought claims against, nor suggested any wrongdoing or negligence, on the part of VIH's auditor. VIH's misclassification therefore suggests, at most, that "proper application of GAAP to the Company's finances was no easy task, even for a party with significant knowledge and expertise." *Wyche v. Adv. Drainage Sys., Inc.*, 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017); *see In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014) ("It is noteworthy that [the] outside auditor[s] did not question [the corporate defendant's] accounting practices.") (citation omitted); *Reilly*, 2018 WL 3559089, at *16 (where an "independent auditor repeatedly signed off on its financial statements," the mere fact of a restatement cannot demonstrate that Company accounting was obviously wrong).

---

[5] Each exhibit is attached to the Declaration of Jacob J. Waldman dated December 22, 2023 that accompanies this memorandum of law.

Nor does Plaintiff suggest that VIH, much less any specific Defendant, "knew or should have known that their accountants had erred." *El Dabe*, 719 Fed. App'x at 608-09; *see also id.* at 608 ("There is no allegation that the Defendants were alerted to any possible defect in the original treatment of the contingent liability and Calavo's auditor, Ernst and Young LLP, issued 'clean audit reports' . . . .").

Plaintiff himself pleads a key point: much of the SPAC industry interpreted Topic 480 in the same way. Plaintiff alleges that the SEC questioned at least *twenty* different SPACs during the same time period about their classification of equity under Topic 480. ¶¶ 175-177. Plaintiff fails to plead an industry-wide conspiracy or other explanation for the unanimous interpretation of Topic 480, beyond that SPACs and their auditors believed their classifications were correct.

### 3. Plaintiff Fails to Plead a False Internal Controls Statement

Plaintiff alleges that statements in the Registration Statement about material weakness in VIH's internal controls, and Company efforts to remedy those weaknesses, were materially misleading. ¶¶ 77-80. These also fail to support a Section 11 claim.

*First*, Plaintiff's claim that VIH only partly disclosed its internal control weakness around classification under Topic 480, and concealed its true extent, is another way of stating that VIH failed properly to classify its equity under Topic 480—which is a protected statement of opinion.

*Second*, Plaintiff fails to allege "specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why." *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012). Indeed, Plaintiff does not dispute that the Company disclosed "a material weakness in our internal control over financial reporting . . . related to the warrants", ¶ 47, nor does Plaintiff offer non-conclusory allegations of falsity as to the Company's representation that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting." *See id.*; *see also AmTrust Fin.*

11

*Servs.,* 135 F. Supp. 3d at 177 (correcting alleged errors does not "suggest that the initial disclosures were made with fraudulent intent.").

*Third*, rather than challenge the accuracy of statements in the Registration Statement, Plaintiff claims these statements concealed the extent of the purported internal control issues by failing to disclose supposed issues with classification of Class A Ordinary shares. But the alleged misstatements do not claim the identified material weaknesses were the full extent of potential internal control issues. In fact, the Registration Statement disclosed that "[e]fforts to remediate this material weakness may not be effective or prevent any future material weakness or significant deficiency in our internal control over financial reporting" and that "[t]he Company cannot assure you that there will not be material weaknesses or significant deficiencies in its internal control over financial reporting in the future." *See* Ex. B (Sept. 17, 2021 Prospectus) at 112-114.

*Fourth*, the adequacy of internal controls is likewise a statement of opinion. *See Fogel v. Vega*, 759 F. App'x 18, 24 (2d Cir. 2018) (dismissing "statements concerning [defendant's] internal controls" because plaintiff failed to "meet the standard for actionable opinion statements under *Omnicare*"). As explained above, Plaintiff fails to allege that Defendants did not honestly believe the accounting treatment in connection with the Class A Ordinary shares was appropriate, and thus fails to allege that Defendants did not honestly believe their internal control statements.

**B.  Plaintiff Fails to Plead That Any Alleged Misstatement Was Material**

Plaintiff fails to plead that the alleged misstatements were material, as required under Section 11. A misrepresentation or omission is material if there is a substantial likelihood that a reasonably prudent investor would consider it important in making a decision. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231, (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, (1976) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been

12

viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.").

Fundamentally, the Amended Complaint does not state "why an investor would find [these] particular line item[s]"—which did not impact revenue or income—"important[.]"  *Yaroni v. Pintec Tech. Hldgs. Ltd.*, 600 F. Supp. 3d 385, 402-403 (S.D.N.Y 2022) (dismissing claim where allegations relating to restatement failed to plead materiality of line items).   Rather, Plaintiff parrots this element, alleging the "financial information was material to investors," because they "are some of the most important metrics that investors and analysts use to assess a company's value and financial health."  ¶ 76.   Plaintiff does not offer facts to support this, nor allege any analyst or market participant's reaction to the restatement of those line items.  *See also* ¶ 204(e) (alleging Bakkt "was followed by securities analysts employed by major brokerage firms who wrote reports.").  Nor does Plaintiff define those line items or explain what they measure.  Plaintiff cannot claim these items are important or "significantly alter[ed] the total mix of information" without this information.  *Loc. 134 IBEW*, 553 F.3d at 205.

Further, the mere fact that Bakkt restated VIH's financials does not establish that the misclassified information, nor the restated information, was material.  In particular, where, as here, the restatement affects only "shareholder equity, not profits or losses," the restatement does not rise to the level of materiality.  *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Hldgs. Ltd.*, 886 F. Supp. 2d 328, 336 (S.D.N.Y. 2021); *see, e.g.*, *Yaroni v. Pintec Tech. Hldgs. Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y 2022) (concluding that claims based on the restatement of financial results and assets, without more, warranted dismissal).

Plaintiff's allegations about the movement of VIH's or Bakkt's stock price do not support materiality.  To start, a stock decline "is not determinative and ***cannot serve as the sole basis for***

13

*finding materiality* in a complaint that is devoid of any other allegations supporting such a finding." *In re Eaton Corp. Sec. Litig.*, 318 F. Supp. 3d 659, 670 (S.D.N.Y. 2018) (alleged misstatements were not material despite 8% stock price decline on the day after disclosure) (emphasis added), *aff'd sub nom.*, *SC Ret. Sys. Grp. Tr. v. Eaton Corp. PLC*, 791 F. App'x 230 (2d Cir. 2019). Moreover, Plaintiff does not allege—even in conclusory terms—that any stock price declines were unusual relative to Bakkt's ordinary (and highly volatile) stock movements. *Arora v. HDFC Bank Ltd.*, 2023 WL 3179533, at *8 (E.D.N.Y. May 1, 2023) (Komitee, J.) (granting motion to dismiss despite stock decline where "Plaintiff's complaint contains few, if any, objective allegations that would help explain the significance of that price change in context.").

If anything, the market's muted reaction to the restated information confirms it was immaterial. For instance, on May 18, 2021, following VIH's disclosure that certain warrants should have been "classified as a liability," ¶ 45, Bakkt's stock declined 13 cents, a mere 1.26%. *See* Ex. C (stock price chart) at 3; *see also Arora*, 2023 WL 3179533, at *8 ("[A] one-day stock-price drop of 2.83% . . . is not unusually large."). By contrast, on 17 of the prior 31 trading days, the stock moved more than 1.26%. Ex. C at 2-3. And on May 24, 2021, after VIH disclosed that "its financial statement included in the Registration Statement was materially inaccurate and did not comply with GAAP," VIH's stock price *increased*. Ex. C at 3. *See Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (Alito, J.) (where disclosure did not affect stock price, it was "immaterial as a matter of law.").

Similarly, on October 14, 2021—the day of the shareholder vote on VIH's merger with Bakkt—following VIH's alleged October 13, 2021 admission that "[VIH] misclassified its Class A redeemable shares, which consequently resulted in false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity," Bakkt's stock declined just 47 cents.

14

¶ 199. But on 17 of the 31 trading days following the October 14 decline, the stock price moved by a larger percentage. Ex. C at 5. In other words, more than half of the 31 trading days after approval of the SPAC Transaction saw greater stock price movement than the day the alleged "fraud" was revealed.

Finally, the stock movement on November 22, 2021 cannot establish materiality since Bakkt had, on October 13, 2021, already disclosed the need for the reclassification and the "impact" it would have. Any stock reaction therefore could not have resulted from "concealed" information. *See Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 340 (S.D.N.Y. 2019), *aff'd on other grounds*, 824 F. App'x 5 (2d Cir. 2020); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 89 (1st Cir. 2014) (in an "efficient market," "any claim that an event moved the stock price when the event was not actually a new disclosure will necessarily fail."); *see also* ¶ 204 ("At all relevant times, the market for VIH's and/or Bakkt's securities was an efficient market . . . .").

Notably, many crypto-related exchanges and/or platforms, including Coinbase, Robinhood, Net Savings Link, and BIGG Digital Assets, declined on November 22, 2021 following an approximately 6% decline in the price of Bitcoin. *See* Ex. D ("Why is Coinbase stock down today? Bitcoin slump," *Seeking Alpha*, Nov. 22, 2021). And—consistent with the stock's volatility— Bakkt's stock price increased by a larger percentage on the prior trading day than it fell on November 22. Ex. C at 5. Plaintiff fails to provide "objective allegations that would help explain the significance of [the] price change in [the] context" of Bakkt's historical stock price movements and the relevant market, which dooms its relevance for materiality purposes. *Arora*, 2023 WL 3179533, at *8.

### C.        Plaintiff Fails to Plead Scienter in Connection with His Securities Act Claim

Plaintiff's Securities Act claim sounds in fraud, as discussed above. Plaintiff's failure to plead scienter for any alleged misstatements, as detailed herein, means the Section 11 claim fails as well. Indeed, Plaintiff actually *disclaims* allegations of scienter for Section 11. ¶¶ 81, 90.

### D.        Plaintiff's Securities Act Claim Is Not Compensable

The Securities Act claim fails for the independent reason that, under the Securities Act, the only compensable losses are those *below* Bakkt's offering price. *See* 15 U.S.C. § 77k(e) (damages "shall represent the difference between the amount paid for the security (***not exceeding the price at which the security was offered to the public***)") (emphasis added). Thus, "a plaintiff who sells a security above its offering price has no cognizable damages under Section 11 of the Securities Act, notwithstanding the fact that such plaintiff may have actually suffered a loss." *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 351 (S.D.N.Y. 2003). Further, Defendants are not liable for losses unrelated to the alleged misstatements. *See* 15 U.S.C. § 77k(e).

As of close of trading on November 22, 2021—the date Plaintiff alleges the "truth" was fully revealed to the market—Bakkt's stock traded above its IPO offering price. Ex. C at 1, 5. Plaintiff therefore had no compensable losses on November 22, 2021, and subsequent losses were necessarily unrelated to the alleged misstatements, since Plaintiff alleges the "truth" was fully disclosed by that date. *Bricklayers*, 752 F.3d at 89. The Securities Act claim should be dismissed for this reason as well.[6]

---

[6] Plaintiff's pre-motion letter response (ECF No. 15 at 2) argues investors who sold following the immaterial October 14, 2021 stock price decline were harmed under the Securities Act. But Plaintiff does not allege that *he* (i) sold stock during that period, (ii) bought stock before the October 14, 2021 stock decline or (iii) did not sell such stock above the offering price.

16

### III.   PLAINTIFF FAILS TO PLEAD EXCHANGE ACT CLAIMS

To state a claim under Section 10(b) of the Exchange Act, Plaintiff must (1) demonstrate a material misrepresentation or omission; (2) establish scienter; (3) show a connection with the purchase or sale of a security; (4) prove reliance; (5) demonstrate economic loss; and (6) establish loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

A Section 10(b) claim is subject to "the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995." *Levy v. Maggiore*, 48 F. Supp. 3d 428, 440 (E.D.N.Y. 2014) (quoting *City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)).   Plaintiffs have failed to meet these pleading standards for several elements of a Section 10(b) claim, each of which is determinative.

#### A.   Plaintiff Fails to Allege a Material Misrepresentation or Omission

Plaintiff claims Defendants made material misrepresentations arising from the application of Topic 480 to additional paid-in capital, accumulated deficit, shareholder equity, internal controls, SOX certifications, and Class A Ordinary share treatment under Topic 480. *E.g.*, ¶¶ 96-164.  But, as detailed above, Plaintiff fails to allege with particularity that these statements—considered opinions as a matter of law—are material misstatements or omissions under *Omnicare*. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d at 365 (GAAP principles "tolerate a range of 'reasonable' treatments" (quoting *Thor Power Tool Co. v. Comm'r Internal Revenue*, 439 U.S. 522, 544 (1979))).  Thus, Plaintiff fails to establish falsity as required under the Exchange Act. And because Plaintiff's falsity claim as to the internal control statements and SOX certifications is based on the same Topic 480 claim, Plaintiff fails to plead any of these statements is false.[7]

---

[7] Plaintiff's assertion that Defendants Martin's and Stamatoglou's SOX certifications were false or misleading fails for the additional reason that SOX certifications "contain[ing] an important qualification" that they were "based on [the certifier's] knowledge" are non-actionable

17

**B.      Plaintiff Fails to Plead a Strong Inference of Scienter**

Plaintiff must allege facts demonstrating a "strong inference" of intent "to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 324 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)), "on a defendant-by-defendant basis," *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *8 (E.D.N.Y. Aug. 6, 2019). [8] The allegations of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged," *Tellabs, Inc*, 551 U.S. at 324. Plaintiff can plead such an inference by alleging either (1) motive and opportunity to commit fraud or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)). Plaintiff alleges neither.

**1.      Plaintiff Fails to Plead Motive and Opportunity**

Plaintiff alleges VIH misclassified its Class A Ordinary shares as permanent equity to maintain stockholders' equity at $5,000,001, which allegedly was necessary to consummate the SPAC Transaction. *E.g.*, ¶ 190. But "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits

---

opinion statements. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 812 (S.D.N.Y. 2018); *see also New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 178 n.16 (same). Here, the SOX certifications included this "important qualification," and are thus opinion statements. *See, e.g.*, ¶¶ 120, 136, 152, 162. Further, claims based on "oversight and surveillance procedures" that merely cite "large block quotations with italicized text" and then "provide [] a bullet-point list" generally to show falsity "fall short of the PSLRA's particularity threshold." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37-38 (2d Cir. 2012).

[8] In fact, Plaintiff alleges no particularized facts about the knowledge, intent, or state of mind of any Individual Defendant at any point in time. *See Hou Liu v. Intercept Pharms., Inc.*, 2020 WL 1489831, at *15 (S.D.N.Y. Mar. 26, 2020) ("[P]laintiffs must . . . 'plead circumstances providing a factual basis for *scienter* for *each* defendant.'") (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009).

18

from a successful transaction," and so "[s]uch allegations alone cannot give rise to a 'strong inference' of fraudulent intent." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004); *see also Fialko v. Alcorba, Ltd.*, 2016 WL 1276455, at *7 (S.D.N.Y. Mar. 30, 2016) ("Motives shared by virtually all corporate insiders include . . . the 'success of an investment.'" (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

Plaintiff's allegation that Defendants "had motive to delay restating VIH's financial statements until after the Merger," ¶ 188, fails for the same reason, and because VIH disclosed that it would have to revise its accounting treatment under Topic 480 on October 13, 2021—two days *before* the merger. *See* ¶ 60 (alleging disclosure that Bakkt would "revise its previously reported financial statements"). Even if not fully corrective (though it was), the October 13 disclosure "nonetheless militates against a finding that [defendants] acted with a culpable state of mind." *Ottmann v. Hanger Ortho. Grp., Inc.*, 353 F.3d 338, 348 (4th Cir. 2003).

Moreover, Plaintiff does not allege any facts suggesting that Defendants (and their auditors) did not honestly believe the October 13, 2021 disclosure satisfied their obligations and that no formal restatement was required. Indeed, Defendants' belief that no restatement was necessary before the SPAC Transaction is supported by the November 22, 2021 Statement of Non-Reliance *and* concurrent news articles indicating that the SEC did not call for SPACs to issue formal restatements concerning Topic 480 treatment until November—well after the SPAC Transaction. *See, e.g.*, Ex. E (White, Nicola M., *Bloomberg*, "SPAC's Headed for New Wave of Restatements for Accounting Errors," Nov. 15, 2021).[9]

---

[9] On a motion to dismiss, a court can take judicial notice of the fact of an article's publication. *See Pearson Cap. Partners, LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 401 (S.D.N.Y. 2015); *Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004) ("The Court d[id] not look into the substance of the articles to resolve any disputed issue on defendant's motion," but instead took judicial notice of the article to note a "media frenzy").

Further, Defendants repeatedly disclosed that VIH needed to maintain over $5 million in tangible assets to complete the business combination. *See, e.g.*, Ex. A at 16; Ex. B at F-8; Ex. F (Nov. 22, 2021 Statement of Non-Reliance) at 2. These candid disclosures negate any inference of scienter. *See Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) ("It defies logic to conclude that executives who are seeking to perpetuate fraudulent information upon the market would make such fulsome disclosures."), *aff'd sub nom.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

In fact, the need to maintain $5 million in tangible assets undermines scienter. The more compelling inference from the industry-wide misapplication of Topic 480 is that the prevailing opinion held by each SPAC was that shares could not be redeemed to the extent such redemptions violated a SPAC charter's tangible asset requirement. The portion of non-redeemable shares could therefore be classified under Topic 480 as permanent equity.[10]

### 2.  Plaintiff Fails to Allege Conscious Misbehavior or Recklessness

Plaintiff makes the conclusory assertion that Defendants knowingly and recklessly failed to comply with GAAP, ¶ 172, then offers no plausible support.

*First*, Plaintiff's conclusory assertion that Defendants were aware "by virtue of their possession of and/or access to information reflecting the true facts," ¶ 165, offers no *facts* as to the information to which Defendants supposedly had access, how or when they had access, if they

---

[10] In late November 2021, after the SEC indicated its disagreement with this widely-held view, numerous SPACs restated their financials. *See, e.g.*, Ex. G (Arclight Clean Transition Corp. II Form 8-K (Nov. 26, 2021)); Ex. H (Pathfinder Acquisition Corp. Form 8-K (Nov. 29, 2021)); Ex. I (Seven Oaks Acquisition Corp. Form 8-K (Nov. 29, 2021)); Ex. J (Accelerate Acquisition Corp. 8-K (Dec. 1, 2023)); Ex. K (FTAC Parnassus Acquisition Corp. Form 8-K (Dec. 2, 2021)); Ex. L (Apollo Strategic Growth Capital II Form 8-K (Dec. 3, 2021)); Ex. M (Monument Circle Acquisition Corp. 8-K (Dec. 3, 2021)); Ex. N (Pioneer Merger Corp. Form 8-K (Dec. 9, 2021)); Ex. O (Lazard Growth Acquisition Corp. I Form 8-K (Dec. 13, 2021)).

ever actually reviewed such (unidentified) information or, if they did, what it would have shown. It is well-settled that this type of unparticularized pleading cannot support knowledge on the part of individuals. *See Frankfurt-Trust Inv. Luxemburg AG v. United Tech. Corp.*, 336 F. Supp. 3d 196, 222 (S.D.N.Y. 2018) (dismissing complaint that had "no descriptions of when these reports would have been provided to the [individual Defendants]"), *aff'd sub nom.*, *Kapitalforeningen Lægernes Invest v. United Tech. Corp.*, 779 F. App'x 69 (2d Cir. 2019); *Maloney v. Ollie's Bargain Outlet Hldgs., Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) ("[T]he complaint fails to specify exactly what information was contained in the report or how [it] 'contradicted Defendants' public statements,' as is required to show scienter.") (quotation omitted). Similarly, Plaintiff cannot allege individual Defendants' knowledge by virtue of their positions as VIH directors and officers. *See In re Chembio Diag., Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 221 (E.D.N.Y. 2022) ("[A]ccess to information based on an individual defendant's executive position is insufficient to support an inference of scienter.").

*Second*, Plaintiff claims Defendants admitted they had no "valid, excusable, or justifiable reason" for not classifying Class A Ordinary shares in accordance with Topic 480, ¶ 173, and that the fact that accounting rules had not recently changed indicates intentional "disregard of the rules and regulations," ¶ 178. Plaintiff offers no authority suggesting Defendants need an "excuse" for misinterpreting an accounting guideline beyond that Defendants' view was a good-faith opinion. *See supra* Section II(A)(1). Regardless, this theory ignores the industry-wide misapplication of Topic 480, which Plaintiff actually pleads. ¶¶ 175-76; Ex. E.

Moreover, Plaintiff's regime would necessarily make a breach of any GAAP or ASC guideline—unless it was a new guidelines—a knowing and intentional or reckless breach, thus collapsing the falsity and scienter elements under Section 10(b). Plaintiff's position is the *opposite*

21

of well-settled caselaw on this issue.  *See Novak*, 216 F.3d at 309 ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim."); *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *9 (S.D.N.Y. Sept. 27, 2021) (same); *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp 3d 193, 228-29 (S.D.N.Y. 2020) (same).

*Third*, the mere fact of a restatement is insufficient to plead that prior financials were *intentionally* or *recklessly* misstated.  Defendants' Registration Statement and Form 10-Ks and 10-K/As were reviewed and verified by Bakkt's auditors, who are not defendants nor alleged to have committed wrongdoing.  *See, e.g.*, Ex. A at 66 (financial statements "present fairly, in all material respects, the financial position of the Company as of December 31, 2020 . . . in conformity with accounting principles . . . ."); Ex. B at 342, F-2.  Especially since an "independent auditor repeatedly signed off on [] financial statements," the statements alone do not demonstrate VIH was acting with scienter when it issued them.  *Reilly*, 2018 WL 3559089, at *17.

### 3. Plaintiff Cannot Overcome the Inference That Defendants Honestly Believed Their Accounting Judgment Was Correct

Even assuming Plaintiff had alleged an inference of scienter, it is far less compelling than the non-culpable inference that any accounting error was a misinterpretation of complex principles.

*First*, VIH's independent auditor signed off on VIH's accounting, which "undermine[s]" scienter.  *See Woolgar*, 477 F. Supp 3d at 228; *see also Wyche*, 2017 WL 971805, at *17 ("Plaintiff has not pleaded . . . contrary facts or obvious 'red flags.'  To the contrary, Plaintiff has pleaded a 'green light': The Complaint indicates that the Company's independent auditor, Deloitte, found no issues").  Indeed, the involvement of Defendants' auditors demonstrates that the application of these accounting principles was "no easy task, even for a party with significant knowledge and expertise."  *Wyche*, 2017 WL 971805, at *17.  And, as above, it was not only Defendants and their

22

auditor that supposedly misapplied Topic 480, but numerous SPACs with no alleged affiliation with Bakkt as well. Indeed, many restated at or around the same time as Bakkt. *See supra* n.10.

*Second*, far from showing fraudulent intent, Plaintiff alleges VIH disclosed the accounting treatment of its Class A Ordinary shares, including the Topic under which VIH made its classifications *and* its bases for doing so. *See, e.g.*, ¶ 50. Shareholders could therefore judge for themselves whether the accounting treatment was proper. Such disclosures are completely inconsistent with an intent to defraud investors. *See May v. KushCo Hldgs., Inc.*, 2020 WL 6587533, at *5 (C.D. Cal. Sept. 25, 2020) (no scienter as to misapplying Topic 480 where company "disclosed all material information necessary to judge whether the accounting rules were properly applied.").[11] Similarly, Defendants disclosed in the Registration Statement that "[e]fforts to remediate" the *disclosed material weakness* in internal controls "may not be effective or prevent any future material weakness or significant deficiency in our internal control over financial reporting" and that VIH could "give no assurance that the measures we have taken or plan to take in the future will remediate the material weakness identified or that any additional material weaknesses or restatements of financial results will not arise in the future." Ex. B at 113; *see also* Ex. P (VIH Form S-4 dated March 31, 2021) at 110 (warning about potential material weaknesses); *see also Kuriakose*, 897 F. Supp. 2d at 185 (disclosure is contrary to inference of scienter).

In sum, Plaintiff asks this Court to accept an implausible inference that an entire industry intentionally misapplied a complex accounting principle so VIH and Bakkt could merge. And yet, despite this conspiracy involving numerous accounting firms and public companies, Defendants

---

[11] These allegations also defeat falsity because "[w]here allegedly undisclosed material information is in fact readily accessible in the public domain, the Second Circuit has found that a defendant may not be held liable for failing to disclose this information." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003).

23

provided investors with extensive disclosures regarding the Company's accounting treatment and internal control weaknesses *and* informed investors *before* the merger that the accounting was incorrect. Plaintiff's theory simply "does not make a whole lot of sense," and therefore must be rejected. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) ("[T]he PSLRA neither allows nor requires us to check our disbelief at the door.").

## IV.   PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION

To plead loss causation for his 10(b) claim, Plaintiff must plead facts showing that the alleged "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005). Specifically, Plaintiff must plead that the disclosures at issue "precipitated a change in the stock price" and "corrected a prior falsehood." *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 496 (S.D.N.Y. 2016).

Plaintiff identifies three purported corrective disclosures. The first two allegedly resulted in price declines of *13 cents* and *47 cents*, respectively. *See* ¶¶ 198-199. The third, the November 22, 2021 Statement of Non-Reliance, allegedly caused Bakkt's stock to "plunge[]" by $2.70. ¶ 200. But Plaintiffs allege that, no later than October 13, 2021, VIH had announced restatement of, *inter alia*, paid-in capital, accumulated deficit, and shareholder equity—metrics Plaintiff claims are material to investors. *E.g.*, ¶¶ 76, 80. Plaintiff thus concedes that investors were aware prior to November 22, 2021 that the Company's financial statements would have to be restated and the impact on VIH's prior financial statements. Merely reminding investors of an adverse fact is insufficient to plead loss causation. *See Sapssov v. Health Mgmt. Assoc., Inc.*, 608 F. App'x 855, 863 (11th Cir. 2015) ("corrective disclosure . . . cannot be merely confirmatory.") (quotation omitted); *In re Keryx Biopharm., Inc., Sec. Litig.*, 2014 WL 585658, at *14 (S.D.N.Y. Feb. 14, 2014) (no loss causation "as a matter of law" where article that allegedly caused stock drop

24

discussed information market learned "more than two weeks" earlier); *In re Omnicom Grp. Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd* 597 F.3d 501 (2d Cir. 2010) ("it is clear that a characterization of previously disclosed facts can cause a loss just not one attributable to the alleged fraud.").

Further, the minimal changes in VIH's stock price following the first two corrective disclosures can be disregarded because Bakkt, like so many companies in its sector, was a volatile stock prone to significant movements with seemingly no provocation. As above, Bakkt's stock price movements preceding or following the alleged corrective disclosures are indistinguishable from many other trading days, and consistent with industry trends. *See supra* Argument § II.B.

## V. PLAINTIFF FAILS TO DEMONSTRATE CONTROL PERSON LIABILITY

Plaintiff fails to allege a primary violation of the Securities Act or Exchange Act, and so control person liability claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act also fail. *ATSI Comm'ns, Inc.*, 93 F.3d at 108 (2d Cir. 2007); *Gutman v. Lizhi, Inc.*, 633 F. Supp. 3d 681, 692 (E.D.N.Y. 2022).

## <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: December 22, 2023
New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Jesse Bernstein*
Jesse Bernstein
Jacob J. Waldman
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com

*Attorneys for Defendant Bakkt Holdings, Inc.*

25

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES**

By:    *s/ Julie E. Cohen*
       Susan L. Saltzstein
       Julie E. Cohen
       One Manhattan West
       New York, New York 10001
       Telephone: (212) 735-3000
       Facsimile: (212) 735-2000
       Email: susan.saltzstein@skadden.com
       Email: julie.cohen@skadden.com

       *Attorneys for Defendants John Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers*

26